| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only |
|---|---|---|

**CASE NO.:** CV 14-02513 SJO
  BK 13-27610 MH

**DATE:** October 13, 2015

**TITLE:** In re Baleine, LP

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                     Not Present
Courtroom Clerk                                      Court Reporter

**COUNSEL PRESENT FOR APPELLANT:**          **COUNSEL PRESENT FOR APPELLEE:**

Not Present                                          Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION FOR RELIEF FROM STAY**

This matter is before the Court on the appeal by Appellant Revere Financial Corporation ("Revere" or "Appellant") of the United States Bankruptcy Court for the Central District of California's (the "Bankruptcy Court") order denying Revere's Motion for Relief from Stay ("Order") in case number 6:13-BK-27610-MH. Appellant filed its opening brief ("Opening Brief") on January 16, 2015. Appellee Larry Simons ("Trustee" or "Appellee"), Chapter 7 trustee for the estate of Baleine LP ("Baleine"), filed its reply brief ("Trustee Response Brief") on February 9, 2015. Interested party Douglas J. Roger ("Roger") also filed a reply brief ("Roger Response Brief") on February 9, 2015. Appellant filed a reply brief ("Reply Brief") on February 23, 2015. For the following reasons, the Court **REVERSES** the Bankruptcy Court's Order denying Revere's motion for relief from stay and **REMANDS** with instructions to grant the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This appeal is related to three other appeals of bankruptcy orders before this Court[1] and involves an intricate set of facts surrounding Revere's attempt to collect the balance due on two loans, the "Roger Loan" and the "BLP Loan." On December 29, 2009, Revere filed a Complaint in California state court (the "State Court Action") against Roger, Baleine, Douglas J. Roger, M.D., Inc., APC ("DJRI"), Nicole Ebarb ("Ebarb"), and numerous other individuals, trustees, and partnerships.

---

[1] *See In re Douglas J. Roger M.D. Inc.*, No. CV 15-00127 SJO (C.D. Cal. Feb. 25, 2015), ECF No. 23; *In re Douglas Jay Roger*, No. CV 15-00087 SJO (C.D. Cal. Feb. 25, 2015), ECF No. 21; *In re Douglas Jay Roger*, No. CV 14-02515 SJO (C.D. Cal. Jan. 29, 2015), ECF No. 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: CV 14-02513 SJO<br>BK 13-27610 MH | DATE: October 13, 2015 |

(Appellants' Excerpts of Record[2] at Tab 1, 8-11.) Revere filed a First Amended Complaint ("FAC") asserting eighteen causes of action on November 15, 2012. (R. at Tab 1, 18-19.)

### A. Revere's Allegations in the State Court Action

The FAC alleges the following with respect to the BLP Loan: Between December 7, 2007 and October 6, 2008, non-party 1st Centennial Bank (the "Bank") loaned money to Baleine (the "BLP Loan"). (R. at Tab 1, 38 ¶ 69.) On December 7, 2007, the Bank and Baleine signed a promissory note ("BLP Note"), under which Baleine agreed to pay all expenses the Bank incurred to collect on the BLP Note if Baleine failed to pay the BLP Note in full when it came due. (R. at Tab 1, 38 ¶ 70.) Also on December 7, 2007, Roger and DJRI entered a guaranty under which Roger and DJRI agreed to repay the BLP Note in full when it came due ("BLP Note Guaranty"), and agreed to pay all expenses the Bank might incur to enforce the BLP Note Guaranty if Roger and DJRI failed to perform. (R. at Tab 1, 38-39 ¶¶ 71-73.) At the time the BLP Loan was made, Ebarb was a general partner at Baleine. (R. at Tab 1, 25 ¶ 13.) Because the BLP Loan was unsecured, Revere applied to the state court for attachments against Roger, DJRI, Baleine, and Ebarb—Revere's request was granted as against Roger, DJRI, and BLP on May 13, 2010. (R. at 502-522.)

The FAC alleges the following with respect to the Roger Loan: On August 21, 2007, the Bank and Roger entered into a promissory note ("Roger Note"). (R. at Tab 1, 36 ¶ 61-6.) DJRI, a California professional corporation, along with Roger, entered into a security agreement ("Roger Note Security Agreement") with the Bank on August 21, 2007 securing the Roger Note with "Collateral," as the term is defined in the Roger Note Security Agreement. (R. at Tab 1, 36 ¶ 63.) Revere and DJRI also entered into a commercial guaranty ("Roger Note Guaranty") on August 21, 2007 in which DJRI guaranteed repayment of the Roger Note in full as and when due, and agreed to repay all expenses the Bank might incur to enforce the Roger Note Guaranty (collectively, the "Roger Loan"). (R. at Tab 1, 37 ¶ 66.)

The FAC further alleges that in June 2009, non-party Federal Deposit Insurance Corporation, as receiver of the Bank, assigned all right, title, and interest in the Roger Note, the Roger Note Security Agreement, the Roger Note Guaranty, the BLP Note, and the BLP Note Guaranty to Revere. (R. at Tab 1, 39-46 ¶¶ 75-117.) The FAC alleges that Roger breached the Roger Loan by failing to repay the $350,000 loan in full and as when due in accordance with the loan agreements' terms. (R. at Tab 1, 39 ¶¶ 78-80.) The FAC further alleges that Roger, Baleine, and

---

[2] Unless otherwise indicated, citations to the multi-volume appellate record are designated as "R. at Tab [X], [Y]" where "[X]" is the tab number and "[Y]" is the page number associated with the two-volume Appendix (Excerpt of Record) by Appellant Revere Financial Corporation for Opening Brief. (*See* ECF Nos. 15-16.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-02513 SJO</u>                            DATE: <u>October 13, 2015</u>
<u>BK 13-27610 MH</u>

Ebarb breached the BLP Loan by failing to repay the $500,000 loan in full and as when due in accordance with the loan agreements' terms. (R. at Tab 1, 41 ¶¶ 86-89.) Revere also requests (1) prejudgment unpaid accrued interest; (2) attorneys' fees, expenses, and costs; (3) the appointment of a receiver to take possession of the Roger Loan collateral; (4) an order directing a public sale of the Roger Note collateral; and (5) other forms of relief discussed more fully below. (R. at Tab 1, 73-79.)

The relevant causes of action asserted by Revere in the State Court Action are: (1) three state-law causes of action for breach of the Roger Note, Roger Note Security Agreement, and Roger Guaranty against Roger and DJRI; (2) one state-law cause of action for judicial foreclosure of the Roger Note Security Agreement against Roger and DJRI; (3) two state-law causes of action for breach of the BLP Note and BLP Guaranty against Roger, DJRI, Baleine, and Ebarb (collectively, the "Loan Claims").[3] (R. at Tab 1, 39-46 ¶¶ 76-117.) Revere also asserts a claim for declaratory relief ("Trust Claim") that numerous trusts are invalid and that the trustees of these trusts must ransfer legal title to all assets of the trusts to Roger. (R. at Tab 1, 56-59 ¶¶ 160-174.) Finally, Revere asserts claims of fraud due to intentional and negligent misrepresentation against Roger, DJRI, Baleine, and Ebarb ("Fraud Claims"), as well as a claim of fraudulent conveyance against Roger, BLP, Ebarb, and others ("Fraudulent Conveyance Claim"). (R. at Tab 1, 59-72 ¶¶ 175-212.)

The parties do not dispute that over the next four years, significant motion practice and contested discovery battles defined the State Court Action.[4] On August 30, 2013, however, the state court issued a non-final minute order granting summary adjudication in Revere's favor as to each of the Loan Claims, determining that Revere is entitled to rely on the terms of the promissory notes ("Loan Order"). (R. at Tab 1, 143.) Thus, the state court determined that Roger and DJRI are jointly and severally liable to Revere on the Roger Loan and that Roger, DJRI, Baleine, and Ebarb are jointly and severally liable to Revere on the BLP Loan. (R. at Tab 1, 39-46 ¶¶ 76-117.) In the

---

[3] The FAC also includes causes of action against Baleine for failure to repay money lent, failure to repay money had and received, failure to repay open book account, and failure to repay amount stated. (R. at Tab 1, 47-48 ¶¶ 123-127; 50-51 ¶¶ 133-137; 52-53 ¶¶ 144-149; 55-56 ¶¶ 155-159.)

[4] Revere alleges by way of an uncontested declaration that the Roger Defendants evaded discovery, "leading to eight motions to compel on sixteen sets of discovery, two motions for protective orders, and order appointing a discovery referee, an order imposing $20,000 in discovery sanctions against the Roger Defendants and their attorneys, and an order imposing evidentiary sanctions against Roger." (R. at Tab 1, 14 ¶ 23.) Moreover, over three dozen motions were heard and more than a million dollars were spent in attorneys' fees in the State Court Action prior to the filing of the bankruptcy petitions. (*Id.*)

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 14-02513 SJO    DATE: October 13, 2015
BK 13-27610 MH

Loan Order, the state court expressly required Revere "to prepare and notice the orders on the motions." (R. at Tab 1, 143.)

Two months later, on October 28, 2013, the state court issued an order granting in part and denying in part Revere's motion for summary adjudication of the Trust Claim ("Trust Order"). (R. at Tab 1, 154.) The Trust Order granted Revere's motion as to three of the four trusts and their trustees due to a lack of credible evidence these trusts had beneficiaries, but denied the motion as to the fourth trust (the "Hiram Trust") because there was evidence in the record that created a material issue of fact as to whether the Hiram Trust had a beneficiary. (R. at Tab 1, 154-56.) Revere dismissed the Fraud Claims prior to filing the instant appeal. (R. at Tab 1, 9.)

    B.    <u>Baleine, Roger, and DJRI File for Chapter 7 Bankruptcy</u>

Days before the state court issued the Trust Order, on October 24, 2013, Baleine voluntarily petitioned to enter chapter 7 bankruptcy ("Baleine Bankruptcy"). (R. at Tab 19, 398.) Also in late October 2013, Roger and DJRI each filed for chapter 7 bankruptcy. *See In re Roger*, No. BK 13--27611 MH (Bankr. C.D. Cal. Oct. 25, 2013), ECF No. 1; *In re Douglas J. Roger, M.D., Inc., APC*, No. BK 13-27344 MH (Bankr. C.D. Cal. Oct. 20, 2013), ECF No. 1. The parties do not dispute that in January 2014, DJRI was dismissed from chapter 7 bankruptcy. (R. at Tab 2, 162.) After Baleine filed for bankruptcy, no party removed the State Court Action to the Bankruptcy Court by the deadline to do so; i.e., 90 days after Baleine's bankruptcy filing. (R. at Tab 1, 16 ¶¶ 28.) It is also undisputed that the state court had not entered the summary judgment order requested in the Loan Order by the time Roger, Baleine, and DJRI entered chapter 7 bankruptcy. (*See* R. at Tab 3, 177.)

A central issue in the Baleine Bankruptcy is the scope of a stay of the State Court Action that is automatically triggered pursuant to 11 U.S.C. section 362 by Baleine entering chapter 7 bankruptcy. (R. at Tab 1, 15-16 ¶¶ 24-25.) In light of this issue, on April 25, 2014, several months into Baleine's chapter 7 bankruptcy proceedings, Revere filed a motion for relief from automatic stay (the "Motion") with the Bankruptcy Court. (R. at Tab 1, 1; Tab 2, 161.) The thrust of Revere's argument was that it should not be forced to litigate the State Court Action piece-meal, where Revere's state law causes of action against Roger and Baleine were automatically stayed by the filing of chapter 7 bankruptcy petitions, but Revere's same causes of action against DJRI and Ebarb, who were not in chapter 7 proceedings, were not stayed. (R. at Tab 2, 162-63.) Specifically, Revere requested that the Bankruptcy Court lift the stay imposed by Baleine's bankruptcy "to liquidate all of R[evere]'s causes of action on the loan documents and all of R[evere]'s causes of action to void sham trusts" by:

- Entering orders on the motions that the State Court previously heard;
- Trying the one remaining cause of action to void a sham trust;
- Entering judgment; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 14-02513 SJO</u>  DATE: <u>October 13, 2015</u>
<u>BK 13-27610 MH</u>

- Entering orders on any post-judgment motions for attorneys' fees and costs.

(R. at Tab 2, 163.) Trustee filed a limited opposition to the Motion on May 6, 2014, arguing that although it did not oppose a lift of the automatic stay to allow Revere to obtain a formal order on causes of action already ruled upon by the state court prior to the bankruptcy filing—namely, orders granting summary adjudication as to the Loan Claims and the Trust Claim with respect to every trust but the Hiram Trust—it did oppose a lift of the automatic stay for other reasons. (R. at Tab 3, 176-77.) Specifically, Trustee argued (1) that Revere had not demonstrated relief from stay was necessary as to the Trust Claim with respect to the Hiram Trust; (2) that relief should not be granted as to the Fraudulent Transfer Claim because the cause of action belonged to the Baleine bankruptcy estate and not Revere; and (3) that any relief from stay to allow Revere to enforce a judgment against the property of the Baleine bankruptcy estate would be improper. (R. at Tab 3, 177-78.) Also on May 6, 2014, Roger filed an opposition to the Motion, arguing "[t]he dispute that [Revere] seeks to take back to the Superior Court is the determination of the reasonableness of [Revere's] attorney's fees and costs, including the costs of the receiver and to have the Hiram Trust declared invalid." (R. at Tab 16, 364.) Roger further posited that

> [t]here is no need to try the validity of the Hiram Trust [as] Debtor has been working with the Chapter 7 trustee to make the arrangements to bring all the assets of all of the trusts, including the Hiram Trust that is the subject of this motion, into the bankruptcy estate as property of the estate. Debtor submits that litigating the validity of the one remaining trust would be a waste of money and judicial resources. It would, however, give [Revere] the opportunity to add tens of thousands of dollars, or more, to its proof of claim.

(R. at Tab 16, 364.) The record does not indicate that Revere filed a proof of claim in the Baleine bankruptcy.

C. The Hearing on Revere's Motion for Relief from Stay

On November 5, 2014, the Bankruptcy Court held a continued hearing on the Motion (the "Hearing"). (R. at Tab 15, 252.) At the outset of the Hearing, the Bankruptcy Court stated that two of the bankruptcy debtors, Roger and Baleine, "survived the motion to dismiss" and therefore "do belong in bankruptcy." (R. at Tab 15, 258.) The Bankruptcy Court also stated that it was

> really not inclined to grant relief from stay. It seems to me to be unnecessary/inefficient under the *Curtis* factors. It seems to me that, you know, it's pretty clear what's owed on the [BLP] note. Right? Is there any argument as to what's owed on the note? And the interest is a fairly readily calculable number.

JS-6  Case 5:14-cv-02513-SJO   Document 25   Filed 10/13/15   Page 6 of 17   Page ID #:752

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-02513 SJO                          DATE:  October 13, 2015
            BK 13-27610 MH

(R. at Tab 15, 257.)  After many exchanges, the Court posited these questions to counsel for Roger and the trustees of the Roger and Baleine estates, all of whom agreed that there was no dispute as to the principal amounts or pre-petition interest on the notes.  (R. at Tab 15, 296-97.)  Indeed, counsel for Roger agreed that Roger

> does not dispute that he owes the principal amounts of the note.  The Debtor does not dispute that he owes the pre-petition interest. . . . the Debtor's dispute is basically over the inclusion of the Receiver's fees in the claim which we join in the objection . . . .  And the Debtor also has concerns about the excessiveness of the fees.

(R. at Tab 15, 297.)

The Bankruptcy Court also heard argument that granting Appellant's Motion would impact the Roger and Baleine bankruptcies.  In particular, given the state court had already determined the debtors on each loan are "jointly and several[ly]" liable, and given that Appellant had "alleged a claim for the Baleine loan in both the Baleine case and the Roger case," the Bankruptcy Court acknowledged the Roger trustee's position that there was "an overlap" such that relief from stay would be improper.  (R. at Tab 15, 261, 265-66.)  Given the uncertainty as to (1) whether the dissolution or voiding of a trust in the State Court Action would determine whether the res of the trust was "property of the estate" (R. at Tab 15, 279), and (2) whether the Trustee could unilaterally seek to dissolve the trust without the Debtor's consent" (R. at Tab 15, 280-81), permitting Appellant to seek to void the still existing Hiram Trust could impact the assets of the Roger and Baleine estates.  The Bankruptcy Court also heard testimony that Roger and Baleine have been "facilitating the [non-exempt] assets being transferred to the Trustee."  (R. at Tab 15, 289-90.)

With respect to the issue of determining and granting relief from stay regarding pre- and post-petition attorneys' fees, the Bankruptcy Court stated it "certainly ha[s] exclusive jurisdiction over post-petition fees, and . . . concurrent jurisdiction as to pre-petition fees."  (R. at Tab 15, 257.)  It then stated that given "the post-petition fees are going to be – are going to have to be determined by myself.  I can determine the pre-petition fees [due to concurrent jurisdiction].  I can determine the interest.  There's really no question here as to what the amounts are owing under the notes.  So those are really my – you know, my main reasons."  (R. at Tab 15, 259.)

Counsel for Revere then challenged the Bankruptcy Court on its apparent admission that it questioned the state court's ability to determine fees.  (R. at Tab 15, 259-60.)  The Bankruptcy Court responded that this was "not out of my thoughts, but it's really the inefficiencies, et cetera."  (R. at Tab 15, 260.)  Counsel for Revere then reminded the Bankruptcy Court that it lacked jurisdiction over DJRI and Ebarb, and stated he "literally cannot find a Ninth Circuit case that says what you said, where they've gotten to the point where the State Court has minute orders saying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: CV 14-02513 SJO<br>BK 13-27610 MH | DATE: October 13, 2015 |

'I'm going to grant you judgment on these causes.'"  (R. at Tab 15, 261-62.)  Counsel for Revere also stated that "[n]o matter what, you will have inconsistent adjudications where – where Revere is required if they want to continue prosecuting their action, which they must, to get a fee award against Nicole Ebar[b] . . . and to get a fee award against DJRI. . . . [a]nd any – any other party. What if your award is different than theirs."  (R. at Tab 15, 263.)  The Bankruptcy Court responded that "it quite possibly could be," to which counsel for Revere responded "and that's why appellate courts say grant relief from stay.  We don't want to run the risk of that.  This is not a nascent case. It's been litigated for four years."  (R. at Tab 15, 263.)

After several more exchanges between the Bankruptcy Court and counsel for Revere, the Trustee weighed in, acknowledging that "this Court is the proper court to assess the validity of Revere's claim, and we do not object to relief from stay being granted so that Revere can enter the judgments on the first six causes of action.  But to the extent that they are going to seek post-petition and pre-petition attorney's fees in the State Court, we do not agree that relief from stay should be granted for that purpose."  (R. at Tab 15, 265 (emphasis added).)  Counsel for Revere then asked the Bankruptcy Court the following question:

> So if the State Court rules one way against the non-debtors and you rule another way against the Debtors, taking into account the big picture, and -- and Revere tries to actually enforce the judgment from the State Court against the non-debtors . . . how exactly is that money credited?

(R. at Tab 15, 268.)  The Bankruptcy Court responded "I don't know.  And, see, that's what – that's what I struggled with, and I've come to the conclusion that I'm not going to be able to tie every loose end of this very – these very complicated cases up in a nice little bow."  (R. at Tab 15, 268-69.)  Counsel for Revere responded that "only one court can.  One court can do that, and you can't, because you don't have jurisdiction over the non-debtors."  (R. at Tab 15, 269.)

In light of the discussions had above, the Bankruptcy Court found that granting relief from stay would be unnecessary.  In particular, the Bankruptcy Court stated that:

> the outside window of what I would grant limited relief from stay for for you to go back into State Court to get those judgments and orders on the principal amount and the pre-petition interest only, so that if we have Mr. Hanover on behalf of his client, his agreement to waive any objection to that, it doesn't seem, given what I would allow the limited relief from stay for, it doesn't seem that there's a need to even allow that limited relief.

(R. at Tab 15, 301.)  The Bankruptcy Court then stated it would deny Appellant's Motion in its entirety without prejudice.  (R. at Tab 15, 301.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-02513 SJO                DATE:   October 13, 2015
            BK 13-27610 MH

On November 20, 2014, the Bankruptcy Court issued the Order denying Revere's Motion, indicating a lack of good cause shown for relief from stay. (R. at Tab 10, 216-17.)

II.   DISCUSSION

Appellant challenges the Bankruptcy Court's Order denying Appellant's motion for relief from stay. In its Opening Brief, Appellant makes the following arguments: (1) the Bankruptcy Court committed reversible error by denying relief from stay as a matter of law; and (2) the Bankruptcy Court committed reversible error by denying relief from stay as a matter of fact. (*See* Appellant's Opening Brief, ECF No. 14.)

In its Roger Response Brief, which was joined in full by Appellee Larry Simons, trustee for Baleine LP, by way of its Trustee Response Brief (Appellee's Reply Br., ECF No. 23), Roger and Trustee argue that (1) Congress intended the automatic bankruptcy stay to be broad and all-encompassing; (2) bankruptcy courts have wide discretion over decisions to grant or deny relief from automatic stay, and such a decision must be affirmed in the absence of a clear abuse of discretion; and (3) the Bankruptcy Court did not abuse its discretion in denying Appellant relief from stay (Appellee's Reply Brief, ECF No. 22).

Before reaching the merits of the Bankruptcy Court's Order, the Court must first consider whether it has jurisdiction to hear the instant appeal.

   A.   Jurisdiction

"The decision of a bankruptcy court granting or denying relief from an automatic stay under section 362(d) is a final decision reviewable by" courts sitting in the Ninth Circuit. *In re Conejo Enters., Inc.* ("*Conejo*"), 96 F.3d 346, 351 (9th Cir. 1996) (citing *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 429 (9th Cir. 1984) ("Congress intended the courts to conclusively and expeditiously adjudicate, apart from the bankruptcy proceedings as a whole, complaints for relief from the automatic stay. Immediate appeal from decisions of the bankruptcy appellate panel is plainly necessary to fulfill such congressional intent.")); *In re Moore*, No. CV 11-00379 DAE, 2011 WL 5593185, at *2 (D. Haw. Nov. 17, 2011) (holding that district courts have jurisdiction to hear appeals from orders of bankruptcy courts sitting in their district). Appellant filed a Notice of Appeal on December 3, 2014, within the fourteen day period prescribed by Federal Rules of Bankruptcy Procedure 8002(a)(1) and 8003(a)(1) (R. at Tab 11), and accordingly, the Court has jurisdiction to hear Revere's appeal of the Order. Fed. R. Bankr. P. 8002(a)(1); 8003(a)(1).

   B.   Standard of Review

Having determined that the Court has jurisdiction to hear the instant appeal, the Court examines the standard by which it must review the Order. "The district court acts as an appellate court in

| | |
|---|---|
| CASE NO.:  CV 14-02513 SJO<br>BK 13-27610 MH | DATE:  October 13, 2015 |

an appeal from a bankruptcy decision." *Los Robles Care Ctr., Inc. v. Soc'y of U.S. Dep't of Health & Human Servs.*, 532 B.R. 308, 311 (C.D. Cal. 2015), *appeal docketed*, No. 15-55845 (9th Cir. June 4, 2015).  "The decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and [reviewing courts] review such decision under the abuse of discretion standard." *Conejo*, 96 F.3d at 351 (citing *In re Arnold*, 806 F.2d 937, 938 (9th Cir.1986)).  Decisions committed to the trial court's discretion will be reversed only where they are "based on an erroneous conclusion of law or when the record contains no evidence on which [the trial court] rationally could have based that decision."  *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) (brackets in original) (citing *In re Hill*, 775 F.2d 1037, 1040 (9th Cir. 1985)). A district court "reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*."  *In re First Alliance Mortg.*, 264 B.R. 634, 644 (C.D. Cal. 2001); *In re Banks*, 263 F.3d 862, 867 (9th Cir. 2001) ("In reviewing decisions of the bankruptcy court, legal conclusions are reviewed de novo, factual determinations are reviewed for clear error, and mixed questions of law and fact are reviewed de novo." (citation omitted)).

  C. <u>Legal Standard</u>

"Under 11 U.S.C. § 362(a), '[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor,' except in those cases specifically enumerated in § 362(b)."  *Conejo*, 96 F.3d at 351 (quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990)).  "The automatic stay provision is 'one of the fundamental debtor protections provided by the bankruptcy laws' and 'plays a vital role in bankruptcy.'"  *In re Landmark Fence Co.*, No. CV 11-00934 AHM, 2011 WL 6826253, at *3 (C.D. Cal. Dec. 9, 2011) (quoting *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).  Indeed, the automatic stay "gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  *Conejo*, 96 F.3d at 351 (internal citations omitted).  In order to effectuate these purposes, "Congress intended the scope of the stay to be broad."  *In re Computer Commc'ns, Inc.*, 824 F.2d 725, 729 (9th Cir. 1987).

A creditor may move for relief from automatic stay under 11 U.S.C. § 362, which provides that a bankruptcy court "shall grant relief from the stay" upon a showing of "cause."  11 U.S.C. § 362(d). "Cause" is determined on a case-by-case basis.  *Tucson Estates*, 912 F.2d at 1166 (citation omitted).  In determining whether "cause" exists, courts often analyze twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).  These factors, which have come to be known as the "*Curtis* factors," are as follows:

  (1) Whether the relief will result in a partial or complete resolution of the issues;
  (2) The lack of any connection with or interference with the bankruptcy case;
  (3) Whether the foreign proceeding involves the debtor as a fiduciary;

Case 5:14-cv-02513-SJO Document 25 Filed 10/13/15 Page 10 of 17 Page ID #:756

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 14-02513 SJO
BK 13-27610 MH

DATE: October 13, 2015

(4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
(7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;
(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination;
(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
(10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
(12) The impact of the stay and the "balance of hurt."

40 B.R. at 799-800 (internal citations omitted); *see also In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004) (adopting the *Curtis* factors and recognizing courts in other circuits that have done the same).

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). While the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *Plumberex*, 311 B.R. at 560. According to the court in *Curtis*, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *Curtis*, 40 B.R. at 806. That said, some cases involving the automatic stay provision do not mention the *Curtis* factors at all. *See, e.g.*, *Conejo*, 96 F.3d at 353. Nevertheless, "[a]lthough the term 'cause' is not defined in the Code, courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial." *Plumberex*, 311 B.R. at 556 (citing *Tucson Estates*, 912 F.2d at 1166).

///
///
///

JS-6                          **UNITED STATES DISTRICT COURT**
                                **CENTRAL DISTRICT OF CALIFORNIA**

                                    **CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.:  CV 14-02513 SJO<br>BK 13-27610 MH | DATE:  October 13, 2015 |

    D.    <u>Analysis</u>

Although the Bankruptcy Court did not address the applicability or importance of each *Curtis* factor during the Hearing or in the Order, the transcript of the Hearing indicates that the Bankruptcy Court considered a number of issues that might result from relieving Appellant of the automatic stay.  The record does not indicate that *Curtis* factors 3, 4, 5, 6, 8, or 9 are at issue in this case, nor do the parties argue to the contrary.  Therefore, the Court addresses only the potentially applicable *Curtis* factors.

        1.    <u>Whether the relief will result in a partial or complete resolution of the issues</u>

Neither Appellant nor Appellee argues that the relief sought by Appellant would lead to a partial or complete resolution of the issues before the Bankruptcy Court.  Indeed, Appellant acknowledges in its Reply Brief that "denying relief from stay would not avoid the need for further litigation in bankruptcy." (Reply 12.)  It is clear that granting relief from stay would not resolve any of the underlying priority and security issues in the Roger or Baleine bankruptcies.

Priority of claims are within the exclusive jurisdiction of the bankruptcy court and cannot be resolved in a state action.  *See People of State of New York v. Irving Trust Co.*, 288 U.S. 329, 332 (1933).  As a result, this factor weighs against granting relief from stay, and the Bankruptcy Court did not commit clear error in so finding.  Although the Bankruptcy Court did not address this factor head on, the record indicates that the Bankruptcy Court considered this issue, as evidenced by the Bankruptcy Court's conclusion that granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors." (R. at Tab 15, 257:1-7.)  The Bankruptcy Court reached this conclusion after stating it could easily determine many of the issues that arose in the State Court Action—including the principal and interest due on the Roger and BLP Loans, which were not disputed, and the amount of pre- and post-petition attorneys' fees—and that these issues did not need to be determined in another forum. (R. at Tab 15, 259:1-6.)  Accordingly, the Bankruptcy Court did not err in reaching the legal conclusion that issues would remain if relief from stay were granted, nor did the Bankruptcy Court abuse its discretion in finding that this factor weighs against granting relief from stay.

        2.    <u>Whether there is a lack of any connection with or interference with the bankruptcy case</u>

The second *Curtis* factor is "[t]he most important factor in determining whether to grant relief from the automatic stay." *In re Curtis*, 40 B.R. at 806.  On the surface, Appellant and Appellee and Roger dispute whether there is any evidence to support a conclusion that granting relief from stay would interfere with the Baleine Bankruptcy. (Appellant's Opening Br. 16; Appellee's Reply Br. 16; Appellant's Reply Br. 17.)  On closer inspection, however, Appellee and Roger conclusorily state that "the bankruptcy court and Trustees all agreed that the state court proceedings would interfere

JS-6
#### UNITED STATES DISTRICT COURT
#### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.:   CV 14-02513 SJO<br>                BK 13-27610 MH | DATE:   October 13, 2015 |

with the administrations of three separate bankruptcy proceedings, with no commensurate benefit to any party," and that granting relief from stay would "only serve to increase post-petition fees that the bankruptcy court has already suggested are inordinately high." (Appellee's Reply Br. 16, 18.)

Appellant responds that granting relief from stay would not interfere with the administration of the Baleine bankruptcy estate because the "Trustee still has the ability to continue to liquidate and administer B[aleine]'s bankruptcy estate. Granting relief from stay merely efficiently liquidates R[evere]'s claim against all jointly and severally liable defendants in one forum." (Appellant's Reply Br. 17.)

Although it is possible that the Bankruptcy Court took into account and weighted additional considerations in reaching its decision to deny relief from stay, the only argument considered by the Bankruptcy Court on the record involved an apparent concern for judicial efficiency and a desire to avoid the excessive costs to the estate in defending the State Court Action that the Bankruptcy Court believed would be generated if the stay was lifted. (*See, e.g.*, R. at Tab 15, 285:13-286:1, 288:13-289:8.) In particular, the Bankruptcy Court espoused a concern that "this case is going to be swallowed up by fees. At the end of the day, the amount at issue—the true debt we'll call it, the—the amount owing on the note is going to be really tiny little fraction of the claims against the estate." (R. at Tab 15, 282:16-23.) When challenged by counsel for Appellant that "the fees in litigating the fees will be so much greater in this court than in the state court," the Bankruptcy Court responded that "based on [its] own experience" this would not be the case. (R. at Tab 15, 283:9-14.) Implicit in this exchange is the Bankruptcy Court's belief that the assets of the Baleine bankruptcy estate would be impacted by granting relief from stay and permitting Appellant to continue to litigate the State Court Action.

To the extent the Bankruptcy Court's conclusion rested on a determination that the Baleine bankruptcy estate would be harmed by granting relief from stay, such a determination is both legally impermissible and factually unsupported. "Ordinarily, litigation costs to a bankruptcy estate do not compel a court to deny stay relief." *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995) (citations omitted). Neither the Bankruptcy Court nor Appellee or Roger provide any argument or authority indicating why this case presents an exception to this rule, particularly where it is speculative at best whether the Baleine bankruptcy estate would in fact be harmed by granting relief from stay. Indeed, the record does not contain **any** documentary evidence concerning projections regarding the comparative attorneys' fees and expenses that would be amassed by litigating in the different fora was before the Bankruptcy Court. Moreover, although it may be true that the principal and interest due on the BLP Loan are not in dispute or that the amount and reasonableness of pre-petition and post-petition[5] attorneys' fees and

---

[5] Although the Bankruptcy Court apparently believed that "the post-petition fees are going to be—are going to have to be determined by myself," neither the Bankruptcy Court nor

Case 5:14-cv-02513-SJO Document 25 Filed 10/13/15 Page 13 of 17 Page ID #:759

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| CASE NO.: | CV 14-02513 SJO | DATE: | October 13, 2015 |
| | BK 13-27610 MH | | |

expenses with respect to the Baleine state court and bankruptcy court matters could be determined by the Bankruptcy Court (R. at Tab 15, 257:1-6), neither the Bankruptcy Court nor Appellee or Roger dispute that the Bankruptcy Court lacks jurisdiction to determine the amount and reasonableness of fees and expenses associated with DJRI and Ebarb, nor that the state court is better situated to determine the amount and reasonableness of the fees and expenses in toto given the State Court Action has been pending for more than four years. It is thus entirely possible that "the fees in litigating the fees will be so much greater in [the bankruptcy] court than in the state court," and that this possibility might outweigh any short-term benefit obtained by Trustee and Roger by not having to concurrently litigate the State Court Action. (R. at Tab 15, 283:9-14.)

This possibility is particularly relevant given (1) the lack of any evidence regarding the costs of litigating the State Court Action versus the Baleine Bankruptcy; and (2) the apparent lack of consideration given to the length of time necessary to litigate all claims against all debtors and non-debtors in the State Court Action, where the parties have been held jointly and severally liable, versus litigating some claims against the debtors in the Bankruptcy Court and the same claims against non-debtors in the State Court Action, which would require duplicative litigation and the possibility of having multiple courts reach inconsistent judgments.[6] In any event, there is "no

---

Appellee or Roger have provided any support for this proposition. (R. at Tab 15, 259:2-3.) Rather, the law makes clear that bankruptcy courts do not have exclusive jurisdiction to determine the amount of post-petition fees that are part of a claim unless they are part of an over-secured creditor's claim under 11 U.S.C. section 506. *See* 11 U.S.C. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."). There is no evidence in the record, however, that Appellant is an over-secured creditor. To the extent the Bankruptcy Court mis-spoke at the Hearing and instead meant that it has exclusive jurisdiction to determine **whether** Appellant is an over-secured creditor, this argument would only minimally weigh in favor of denying relief from stay, as both the Bankruptcy Court and the state court would need to determine certain aspects of the attorneys' fees issues.

[6] Although the Bankruptcy Court was careful not to directly call into question the state court's ability to determine the reasonableness of the attorneys' fees in this case, certain statements made by the Bankruptcy Court at the hearing give the Court pause. For example, the Bankruptcy Court stated toward the outset of the hearing that:

> I am concerned that the State Court would—I am—I am concerned about the—in some small part what the—that the ruling on those fees may be more

evidence on which [the Bankruptcy Court] rationally could have based" its conclusion that granting relief from stay would adversely impact the Baleine bankruptcy estate, and therefore the Bankruptcy Court erred in finding that this factor weighed in favor of denying relief from stay. *In re Windmill Farms, Inc.*, 841 F.2d at 1472.

Accordingly, the record contains no evidence from which the Bankruptcy Court reasonably could have found that the Baleine Bankruptcy proceedings or the Baleine bankruptcy estate would have been negatively impacted by lifting the stay in the State Court Action. To the extent the Bankruptcy Court considered this *Curtis* factor, it improperly concluded that the factor weighs in favor of denying relief from stay.

> 7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties

Counsel for Appellant stated that Baleine has "at most, $50,000 in creditors that we know of, maybe $52,000 in creditors," evidencing that other creditor parties would be affected by a lift of the stay. (R. at Tab15, 286-87.) Although the record indicates the existence of non-Revere creditors, there is no evidence that granting relief from stay would prejudice the interests of these creditors. As discussed above, there is no evidence from which the Bankruptcy Court could have reasonably determined that the Baleine bankruptcy estate would have been negatively impacted by lifting the stay in the State Court Action; it follows that there is no evidence that the non-Revere creditors of the Baleine bankruptcy estate would be prejudiced by granting relief from stay. Accordingly, this factor weighs in favor of granting relief from stay, and to the extent the Bankruptcy Court concluded otherwise, the Bankruptcy Court erred as a matter of fact and law.

> 10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties

The Bankruptcy Court stated at the Hearing that granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors" because there is no dispute what is owed on the notes or the interest due on the notes, and also because the Bankruptcy Court has "exclusive

---

of a—more of a—through a narrow microscope and would not take into account sort of the bigger picture.

(R. at Tab 15, 258:11-15.) To the extent the Bankruptcy Court's decision rested on such an assumption, the Bankruptcy Court committed legal error. *See Tucson Estates*, 912 F.2d at 1167 ("An underlying assumption made by the bankruptcy court was that its decision on this issue and the misappropriation damages claim might be different from the state court's. Yet state law governs both issues, so both courts should reach the same result.").

Case 5:14-cv-02513-SJO   Document 25   Filed 10/13/15   Page 15 of 17   Page ID #:761

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-02513 SJO                        DATE:  October 13, 2015
            BK 13-27610 MH

jurisdiction over post-petition fees" and "concurrent jurisdiction as to pre-petition fees." (R. at Tab 15, 257, 260, 271.)  Both the record and case law indicate that the Bankruptcy Court erred in reaching this unsupported conclusion.

First, as noted above, there is no evidence in the record from which the Bankruptcy Court could have reasonably determined that the award of attorneys' fees and expenses would be smaller if the stay remained in place than if the stay were lifted.  Indeed, neither the Bankruptcy Court nor Appellee or Roger provide any evidence to rebut Appellant's inherently sensible argument that it and the Bankruptcy Court would both need to incur substantial monetary and administrative costs in familiarizing the Bankruptcy Court with the four years' worth of fees incurred in the State Court Action. (R. at Tab 15, 273.)  Thus, the Bankruptcy Court's conclusion that "based on [its] own experience" the fees would be lower if the stay remained in place is not supported by any evidence, and the Bankruptcy Court committed clear error in reaching this factual determination. (R. at Tab 15, 283:9-14.)

In addition, Appellant cites to numerous cases indicating that it would be in the interest of judicial economy to grant relief from stay in this case.  In its Opening Brief, Appellant contends that lifting the stay and permitting Appellant to obtain orders codifying the state court's minute order and to litigate the Trust Claim against the Hiram Trust would be far more efficient and economical than litigating the State Court Action and bankruptcy proceedings in a piece-meal manner.  In support of these arguments, Appellant cites to *Edmondson v. America West Airlines (In re America West Airlines)*, which holds that "it would be a waste of [a bankruptcy court's] judicial resources to attempt to estimate the claim and its priority among other claimants." 148 B.R. 920, 925 (D. Ariz. 1993).  The Court finds *In re America West Airlines* to be persuasive.  Here, as in *In re America West Airlines*, there can be no question that it would be "more appropriate" for the non-bankruptcy court "to first determine the non-bankruptcy issues, i.e., whether a claim exists and the damages therein if any.  After such determination, then the bankruptcy issues become relevant." *Id.* at 924-25.  Appellant should be permitted to return to state court to obtain formal judgments that have largely been decided, and then the Bankruptcy Court can determine priority issues and how to divide the assets of the Baleine estate.

Moreover, given the advanced stage of the State Court Action—at the time the State Court Action was stayed on January 2, 2014, trial was scheduled for April 11, 2014, just over four months away (R. at Tab 1, 14-15 ¶ 23, 16 ¶¶ 26-27)—it stands to reason that judicial economy would be well served by permitting the State Court Action to reach resolution before addressing the bankruptcy issues, particularly where the State Court Action involves solely state law issues and not doing so runs a significant risk of creating inconsistent rulings.  Indeed, given the existence of two non-debtor parties over whom the Bankruptcy Court cannot exercise jurisdiction and given the state court's familiarity with the discovery practices that occurred in the four plus years since the Complaint was filed, it would be unreasonable for the Bankruptcy Court to conclude that it is better equipped than the state court to determine issues such as the reasonableness of attorneys' fees.

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 14-02513 SJO
            BK 13-27610 MH

DATE:  October 13, 2015

Cases from various courts are in accord, although some concern a related doctrine of abstention rather than a motion for relief from stay.  *See In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986) ("In this case, several factors could constitute 'cause.'  A clear congressional policy exists to give state law claimants a right to have claims heard in state court. . . . More importantly, a state court trial is about to take place involving the very same issues."); *Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 719 (Bankr. D. Del. 1996) ("The court has also considered other factors that are germane to this type of motion [for relief from stay].  Pursuit has invested significant human resources and about $800,000 in legal fees in prosecuting the Texas action to date.  Common sense suggests that those investments would be best protected by allowing the Texas action to proceed."); *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 570-71 (Bankr. N.D. Cal. 2002) (finding that where "state law issues predominate over bankruptcy issues" and where almost all claimants "commenced litigation in state court prior to the petition date," abstention is favored); *In re McGuirt*, 61 B.R. 974, 976 (Bankr. S.D. Tex. 1986) ("If it be a matter of discretion, considering all of the relevant factors, giving special emphasis to the fact that the state court litigation is actually on the verge of trial and can be reached shortly, discretion does dictate that the interests of justice require abstention.").  Tellingly, neither Roger nor Appellee cites to no relevant authority to the contrary.

The Bankruptcy Court therefore committed clear error in concluding that granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors."  (R. at Tab 15, 257:2-3.)

> 11. <u>Whether the foreign proceedings have progressed to the point where the parties are prepared for trial</u>

As stated above, the record indicates that, at the time the State Court Action was stayed on January 2, 2014, trial in the State Court Action was set to begin April 11, 2014.  (R. at Tab 1, 14-15 ¶ 23, 16 ¶¶ 26-27.)  This factor therefore suggests that Appellant has "cause" to seek relief from stay, and weighs against the reasonableness of the Bankruptcy Court's decision to deny relief from stay.  "[C]ourts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial."  *Plumberex*, 311 B.R. at 556 (citing *Tucson Estates*, 912 F.2d at 1166); *see also Curtis*, 40 B.R. at 805 ("[A] desire to permit an action to proceed to completion in another tribunal . . . contemplates the situation in which the debtor is a party to a prepetition action that has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court.") (internal citation and quotation marks omitted).  Thus, to the extent the Bankruptcy Court found that this factor weighed against granting relief from stay, the Bankruptcy Court erred.

> 12. <u>The impact of the stay and the "balance of hurt"</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.:   CV 14-02513 SJO<br>BK 13-27610 MH | DATE:   October 13, 2015 |

Appellant and Appellee and Roger dispute which party or parties would stand to suffer more should relief from stay be denied or granted, respectively.  As discussed above, the record does not contain sufficient evidence from which the Bankruptcy Court could reasonably conclude that any harm would befall the Baleine bankruptcy estate or its creditors should relief from stay be granted.  The record does, on the other hand, reveal that Appellant stands to face significant harm should the stay persist.  In particular, Appellant would be prejudiced by having to litigate its claims against Roger and Baleine in a piece-meal fashion.  Indeed, the Bankruptcy Court agreed with Appellant at the Hearing that Appellant would need to expend substantial resources to familiarize the Bankruptcy Court with the four years' worth of fees incurred in the State Court Action. (R. at Tab 15, 273.)  Thus, this factor weighs in favor of granting relief from stay.

      E.     Conclusion

The role of a reviewing court is "'not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.'"  *Wood v. GCC Bend*, LLC, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).  An analysis of the applicable *Curtis* factors reveals that five factors—including "[t]he most important factor in determining whether to grant relief from the automatic stay," *Curtis*, 40 B.R. at 806—indicate that "cause" exists to grant relief from stay, while one factor weighs against a finding of "cause."  The Court's examination of the Hearing reveals that the Bankruptcy Court failed to give any weight to certain facts and reached improper conclusions regarding other facts.  Thus, on this record, the Court finds that the Bankruptcy Court abused its discretion in finding a lack of "cause" to support granting relief from stay.

III.     RULING

For the foregoing reasons, the Court finds that the Bankruptcy Court abused its discretion in denying Appellant Revere Financial Corporation's Motion for Relief from Stay, and **REVERSES** the Bankruptcy Court's Order.  The Court **REMANDS** the case with instructions to grant Appellant's Motion.  All pending motions, including Interested Party Douglas J Roger's Motion to Dismiss Bankruptcy Appeal (ECF No. 20) and Trustee Arturo Cisneros's Motion for Joinder (ECF No. 29), are **DISMISSED AS MOOT**.

IT IS SO ORDERED.